Our first case today is 2015-1071, Atlas v. Medtronic. Mr. Summerfield. Thank you, Your Honor. May it please the Court. I'm going to be addressing two issues in this appeal. The first is claim construction as pertains to the infringement issue, and the second is claim construction as pertains to the validity issue. The question on infringement has to do with the judge's construction of the establishing and transmitting terms of the 734 patent, and more specifically, what does the hub have to establish and when does that information have to be sent to the remotes? Can I ask you a question based on – I'm not sure whether you said this in your brief in this case or in the companion case. I think at page 21 of your brief in the companion case, at least, you seem to accept, and the question is do you accept, the notion that information about the slot allotment, which is my shorthand for what's supposed to happen around the clock in the cycle, has to be sent out before 6 o'clock, before the remote transmission slots begin. The transmission information does, Your Honor. There's another question, however, as to whether the length of the communication cycle needs to be communicated at that time as well. In other words, when to let the remotes know to turn off their transmitters. So certainly to allow the remotes to turn on their receivers when they are supposed to, that information has to be communicated beforehand. Before what hand? Before they actually receive information from the hub during the communication cycle. Just with reference to figure 3, would you pull out your figure 3? Yes, Your Honor, that's where I was going. So would you agree, and what precise information would you agree, the hub has to transmit something, it seems to me, it would have to transmit, for example, interval time during what would be up until the end of what's numbered 82. Because if it doesn't transmit start times and interval times, then for example, in this example, TXOP1 wouldn't know that it should turn on, although it's already turned on because it's receiving something from the hub, but it wouldn't necessarily know it can go ahead and transmit. But most importantly to this patent, it seems, TXOP2 ought to know at the start of TXOP1 that it can go ahead and shut down everything, transmission and reception and save battery. And so it seems that up until number 82, not only does start time need to be conveyed, but interval time, or TXOP2 doesn't know to power down everything when TXOP1 is available. Does that make sense? It does, Your Honor, and as a matter of fact, that would be, that's correct for the multiple remote scenario. The TXOP2, in other words, remote number two, has to know when to turn on its receiver, or its transmitter rather, so it has to know how long TXOP is going to be transmitting for. The problem was that in the companion case, what the district court found was that all this information has to be transmitted before the communication cycle even begins. Right, but we can get to that in the companion case. In this case, there's no dispute. You don't make a dispute that as long as all this information has to be transmitted before 7 o'clock on figure three, there's no infringement. At least the start times for the transmission opportunities, Your Honor. However, the end of a frame can be transmitted after that point, and that is actually taught specifically in the patent. If we go to column 25, line 55, and this is if you want to... So wait, I just want to make sure I understand the pieces of information that you're delineating between in terms of what you're agreeing needs to be transmitted by, say, 7 o'clock on this diagram. The start time and the interval for each of the remotes would both have to be transmitted prior to the TXOP1 beginning. Yes, Your Honor, the question is... That's right, Your Honor, but the question then becomes, do both of those pieces of information have to be transmitted at the same time before 7 o'clock on the clock? In other words, do you have to tell a particular remote, this is going to be your start time and this is going to be your end time at the same time, as opposed to waiting until sometime later? Say, for example, at the end of the transmission opportunity to tell the remote, we are now done. And that's why I want to refer the court to column 25, line 55. It says in ending flag 166... Go a little slower. Hold on, I've got to find it. I'm sorry. Column 25. A126 in the Medtronic appendix, Your Honor. Go ahead. Column 25, line 55. At ending flag 166... This is a unique bit pattern that provides unambiguous identification of the end of a frame 152. So that's basically saying that that flag is what indicates the end of the frame, not information that the remote had been transmitted to it at some point earlier than that. So the only point I'm making is that contrary to what the district court found, one need not send the start and end information to the remotes at the same time. Is there, just to be clear, any disclosure in this patent you'd like to point me to where an embodiment doesn't send them together? I'm not saying that's required. I just want to know, is there anything in the patent? Yes, the one I just read, Your Honor. The end flag is the thing that tells the remote that a frame is over. But here, is there any evidence that this end flag is being sent separate from the rest of the transmission information? Yes, it's at the end of the frame. So there would be a beginning flag at the beginning of the frame and an end frame at the end of the frame. What figure is this? I'm sorry, this I believe is figure 8. So if we look at figure 8, the starting flag is element 160 and the ending flag is element 166. Yeah, but isn't this a single transmission? Isn't that what figure 8 is? It's part of the same frame, Your Honor. Same frame or same transmission? It's the same frame, Your Honor. This is frame 152 that appears in the sequence of frames in figure 7. That's correct. So technically they're not sent at the same time because they are in different header positions of the frame. But they are part of the same frame. The only point is the district court's construction seems to require that both be sent at the same time. Technically that doesn't happen in frame 152. But just to be clear, from our standpoint, from ATLAS's standpoint, the problematic part of the claim construction does indeed come in the companion case where the information has to be sent before the communication cycle commences. We think there is plenty of... Well, we're going to have more time to revisit all of this in the next case, but this is your only chance to talk about the anticipation. So could I ask you to move to that? Your Honor, I was going to reserve that for rebuttal time, but I'm happy to do it now. You should do it now. Yes. Thank you. So the question here is whether each really means each and whether may can be read into the limitation in question regarding what has to happen in each communication cycle. The district court, we believe, properly found that the plain language of the claim requires that there be a transmission from the hub to the remote and from at least one remote to the hub in each communication cycle. Why do you say at least one remote? That's the part... I don't understand why you're not defending the district court's construction. You have come up here and proposed a different construction than what the district court did. I assume it's because of other cases and not this one because Medtronic's only got one remote. So the district court's construction can't affect your infringement assessment of Medtronic, so I assume this is a strategic reason based on different cases. No, Your Honor. It actually has to do with what the patent teaches about transmission opportunities. Very clearly the patent also teaches that there can be intervals where the remote, a remote, doesn't have to avail itself of its transmission opportunity and therefore the remote wouldn't transmit. So we believe that all the claim actually requires is that a single remote transmit to the hub. Why couldn't there be a communication cycle in which none of the remotes have anything to say? Well, that wouldn't infringe, Your Honor. That's the point. We don't think it would infringe and we don't think that anything that allowed that, like Natarajan in this case, would anticipate. So if there are communication cycles where no remote transmits to the hub, as in the case of Natarajan, that wouldn't be anticipatory because of the limitation that says each communication cycle in which the hub transmits frames to the remotes and the remotes transmit frames to the hub. No, but it doesn't say each communication cycle. It says the hub establishing repeating communication cycles, each of which has intervals during which the hub and remotes transmit and receive frames. If you get the benefit of somebody has to send something in that plain language, why doesn't each one of them have to send something? Because what I'm having trouble with is reconciling your proposed construction. I understand the district court's construction and I can see how it reconciles with the plain language. I don't understand how your construction reconciles with the plain language. I understand that you want to preserve this transmission opportunity and some people don't transmit during them, and I see that that is covered in many other claims like Claim 17 and Claim 6. I mean, I see that present, that there may be a cycle where there's no transmission and, in fact, then the hub can reallocate time based on lack of transmission, and I see that present in other claims. I don't see any of that present in this claim, and so I'm wondering how your proposed construction reconciles with this very precise language, each of which has intervals during which the hub and remotes transmit and receive frames. Well, we contend, Your Honor, that that construction will require language that has all remotes transmit frames, and that's not what it says. And Claim 17, which depends from Claim 14, has those two limitations in it. It has the each communication cycle language that we're talking about, and it also has the permissive language that you just referred to. So if the limitation in Claim 14 actually required that all remotes transmit frames, the notion of a transmission opportunity would become pretty much superfluous. Okay, that's a good point, and I didn't notice that before. So Claim 14 has the identical language to Claim 21 with regard to this element, and then Claim 17, which depends on 15, which depends on 14, further delineates by indicating that the hub can adjust the length of communication for, does it actually expressly say people cannot transmit? Certainly the allocation would include a situation where the hub prevents or doesn't allocate time to a particular remote, yes. But the way the patent explains transmission opportunities throughout, it says that it's permissive. So that's why we believe that the proper construction says... It does, oh, it absolutely does, transmission opportunities throughout, but that transmission opportunity is not used in 21. That's true, Your Honor, but we have to construe the same limitation consistently from claim to claim to claim. So if Claim 14, if in Claim 14 that limitation is problematic, given the addition of what language is in Claim 17, then we can't alter the construction in Claim 21 to be different than it is in Claim 14. Well, what I don't, okay, so if I agree with what you're saying now, the one thing I'm struggling with is why does at least one of them have to send something? Where is the evidence of that? Because the language doesn't say may here the way it does. For example, later on in Claim, if we stick with Claim 14, there's language of allowance there. So, for example, around Line 50, the interval is being one when the hub is allowed to transmit frames to the remotes. The same language is in 21. The hub transmits a plurality. The word allow appears, what, three or four different times. Yes, we could look at Claim 21 too. The point is these are all limitations that the claims have in common. So the point is, in the same claim, we have language that talks about when things are allowed to happen. That language isn't in the establishing limitation as far as each communication cycle language is concerned. So the maxim is that if a patentee uses language in one place and doesn't use it in another, you assume that where it's not used, it doesn't apply. So that's why we read this language as not being permissive, that there has to be a frame transmitted from a remote to the hub. Can I just clarify one thing? Do you read the district court as having adopted a different construction on this point from yours? It's possible. Yes, we do. Because of what language? Because of the language that says the remotes. So does the claim language. That's just mimicking the claim language. How do we know whether the district court meant by that phrase what you mean by it or whether it means all remotes? I take your point, Judge Toronto. It may very well be that what the district court had in mind was a single remote for the same reason that we believe that that's what this language means on its face. And later in the claim, there is a transition from the remotes to the remote. Doesn't that suggest a kind of imprecision in the use of language in some of these claim elements? I mean, it seems to me on the face of this particular claim language, put aside the one that I just referred to, the one about powering off. It goes from plural to singular without breathing in between. There is on its face language in this one about intervals. And nobody would say that in each of the intervals, not each cycle, but each of the intervals, all the things that follow the language, namely the hub. There's the hub. There's the remotes. There's the receiving. There's the transmitting. And even remotes has plural inside it. Nobody would say that in each interval, all of the four at least combinations have to occur. So there must be some working out of a distribution of these plurals over the verbs and over the separate subjects, none of which seems to me to be a matter of plain on its face language. And as soon as you get out of the plain language, everything else in the patent screams these are allowance opportunities, not mandatory ones. Well, Your Honor, there are examples that show mandatory transmissions from the remotes to the hub. The control things, but it doesn't say mandatory. That doesn't mean the control. That doesn't say mandatory. It says they're optional. No, Your Honor. There are passages that talk about particular communications from the remotes to the hub that the remotes do in particular instances. And it's not discretionary. And I can take the court through that. I see that I'm into my rebuttal time. I'm happy to wait until then to do it. Okay. Why don't we hear from Mr. O'Quinn. Thank you, Your Honor. Thank you, Judge Moore. May it please the court. I'd like to respond to Alice's arguments on non-infringement and then turn to the issue of invalidity where the court should order that judgment of anticipation be found, but at a minimum Medtronic should be entitled to a remand on obviousness. Would you mind starting with the anticipation since if you prevail on that, we don't need to reach non-infringement here? I would be happy to, Judge Tronter. So on anticipation and on obviousness, there are three separate reasons that the court should reverse the judgment. First, the prior art anticipates because all of the elements are met even if having a remote transmit each cycle is mandatory. And the reason for that is that the prior art discloses systems where remotes in fact transmitted each cycle. So this ends up being akin to Upshur-Smith. And that would be a factual question which the district court didn't reach that we would have to reach for the first time on our own, right? So, Judge Tronter, I don't think that there was any dispute that the only difference between the non-prior art references... I agree. There's no dispute that if you're right about the claim construction of this point, the thing is anticipated. Absolutely right, Judge Tronter. I think also they conceded below. This is at A2621 in Atlas's expert report. The quote, without the establishment of communication cycles, each of which having at least one interval in which there will be transmissions of at least one frame from a remote to a hub, the invention would be indistinguishable. So absolutely, if the court reverses on the claim construction issue, we're entitled to judgment on anticipation. Then just focus on the claim construction issue, please. I'd be happy to, Judge Moore. So under the claim, do the remotes determine whether to turn on or not independently? So, Judge Arena, under the claim, the remotes determine whether to turn their transmitters or receivers on or off based on the information that they receive from the hub. I think that goes principally to the... I guess what I'm getting at is I don't see anything in the claim or the specification that makes it mandatory that a remote turn on during any particular communication cycle. Oh, that's absolutely right, Judge Arena. There's nothing in either the claim or... Then it could be that they decide, all of them decide, there can be a communication cycle where none of the remotes turn on. No, that's right. In fact, this sort of gets to, not to turn to the Upshur-Smith argument, I'm going to stay on the claim construction argument, but the one thing that they pointed to to try to distinguish the prior art from the present invention was to say, our expert had conceded that in the prior art it was possible that the remotes would not transmit. And what he testified, this is at A1573, is, quote, as in with most communication systems, if there's no data to send by any of the remotes, then the remotes wouldn't request data, and that would be one of the states of the system. And that's exactly what we think that this claim goes to and this invention goes to. The invention is absolutely agnostic as to whether or not the remotes, in fact, have information to transmit. They don't care. This is about a Wi-Fi networking patent, setting up ways for laptops and other devices to communicate. Unless the district court or your opponent here is right about this one claim element. We're not here to construe what the patent is about. Of course not. We're working on this claim language, which is informed in its meaning by all of the rest. But it seems to me for the last five minutes, at least I have been trying to get you to talk about the claim language and you're talking about everything else. Well, let me talk directly about it, because the claim language that they refer to is the language at column 50, this is at A138, column 50, line 54. The hub establishing repeating communication cycles, each of which has intervals during which the hub and the remotes transmit and receive frames. And the way that they're reading this, I think... Forget about the way they're reading it. How about the way the district court read it? Well, I'm not sure, Judge Moore, that there's actually a difference between the way they're reading it and the way that the district court... There is a difference. The district court said, basically, every remote has to transmit and receive frames in every interval period. Well, and Judge Moore, I don't think that you can reconcile that either with the language that appears later in the claim or with every single embodiment of the invention and the repeated references in the specification about the fact that remotes may choose not to transmit. So if you look further in the claim... I understand that there are absolutely examples in the specification where remotes are not transmitting. And, in fact, there are claims that expressly cover that set of circumstances. There are a bunch of claims here that talk about transmission opportunities as opposed to transmitting and receiving, which is what this claim does. And so, certainly, all of those embodiments that you're disclosing, which allow for non-transmission during certain intervals by certain remotes, are absolutely covered by other claims of this patent. There's no question about that. So, Judge Moore, I think that all of the claims go to transmission opportunities. Well, but if that were true... I mean, isn't it a basic tenet of statutory and, therefore, claim construction, statutory interpretation and claim construction, that if different words are used in different sections of the same document, we should presume that those different words were intentional? And, throughout, there are a number of claims here that, instead of saying each of which the remotes transmit and receive, they say transmission opportunity. Look at Claim 17. Transmission opportunity is identically substituted. So, in some spaces, you have transmission opportunity, and, in other spaces, you say the remotes transmit and receive frames. Boom. Seems like a pretty clear distinction in the choice of language. So, Judge Moore, I think this is a situation akin to world-class technologies where the presumption of different scope is overcome by what's in the written description itself. I mean, every single one of these claims makes reference to whether you want to use the term transmission opportunities. Not every single one. Well, sure. Where is the word transmission opportunities in Claim 21? You said every single claim uses the term transmission opportunities. I did not say that, Judge Moore. What I was saying was that every single claim uses words that get at the same idea as transmission opportunities. And the point that I've been trying to get to is to say, if you look at Line 60 of Column 50, it says the intervals being ones when the hub is allowed to transmit frames to the remotes and when the remotes are allowed to transmit frames to the hub. And that's the language of permissiveness. No, that is the language of defining the time interval, and that's what's being done in that limitation. There are two things you need to know. You need to know when you are allowed to transmit something and when you are not allowed to transmit something, and that is what that particular element goes to, the predeterminable intervals. And it's explaining the nature of the predeterminable intervals. From this time to this time, you're allowed to transmit and receive. Judge Moore, I agree that that's what the purpose of that language is, to have an interval in which the remotes know that they can transmit. But that gets to the idea, this is when you are allowed to transmit. It doesn't mean that you have to transmit. And if the thought was, well, there must be some transmission from a remote or every remote, and of course their position is that it only needs to be one remote, a random remote. You could have ten remotes. It might be the first one. It might be the tenth one. They don't know. They don't care why. And you can only know that it infringed after the fact. But if any one of these claims, much less all of them except for Claim 17, we're making it mandatory that at least one remote… What do you mean if every one of these claims? The only claim we're focused on is Claim 21. I understand that, Judge Moore, but the language that we're talking about appears in all the claims. The language we're talking about appears in which each… The hub establishing repeating communication cycles, each of which has intervals during which the hub and the remotes transmit and receive frames. That's the language that they hang their hat on to say, therefore the remotes or at least a remote must transmit. And that language is in all of the claims. But the district court said, therefore, each remote must transmit and receive. So focus on the construction of the district court because that's what's on appeal. What's not on appeal is the construction they're advocating. So tell me why the district court construction is wrong. Well, for starters, if the district court's construction was right, you'd expect to find at least one embodiment in the patent in which it was mandatory that all the remotes actually transmit. And there's not a single embodiment that discloses that. In fact, quite the opposite. What about the control frame embodiment, if that's the right term that was referred to? Is that Figure 18? I think that's Figure 18. Judge Toronto, I think if you look at A131, Column 35, Lines 6 to 11, it discusses this. And what it discusses is that a remote may leave its TXOP unused or may send a control frame. So it's entirely... Column 35 where? I'm sorry, Column 35, starting around Line 6 through Line 11. And specifically, if you start at Line 9, in the absence of any frames awaiting transmission, the remote 66 may leave its TXOP unused or may send a control frame. And Judge Moore, I understand that the term TXOP, Transmission Opportunity, those words don't appear in every single claim, but every single embodiment talks about transmission opportunities. That's what the intervals are. Because the way this whole thing works is by assigning different... I asked you the question, I think, in specific response to what I thought was your assertion that there is no embodiment in which the remotes were speaking in each cycle. And the point of my question was, isn't this at least an embodiment in which, in fact, all of the remotes, let alone some, were speaking in each cycle? My point, Judge Toronto, was that there's no embodiment in which it says that all of the remotes, or even any of the remotes, must speak each cycle. And the reason that I say that is because... But you wouldn't expect, I'm sorry, you wouldn't expect an embodiment to be one that requires something. They're describing one token of the type that they're describing. Well, Judge Toronto, I guess, to put it simply, if the patent contemplated that in the overwhelming majority of the claims there must be a transmission every cycle from one or more of the remotes, or all of the remotes, you would think that there would be something here that would say that the remotes must at least send a control frame. And they don't talk that way. They talk about it being permissive. You may use your opportunity, you may leave your opportunity entirely unused, or you may send a control frame, as opposed to saying, if you don't have anything to transmit, then you must transmit a control frame. And you would expect that there would be some discussion saying why you must submit a control frame. And frankly, the idea of making each of the remotes transmit a control frame is really inconsistent with the core features of the invention itself, which is namely not only, A, to provide transmission opportunities so that they don't talk over each other, but also to achieve battery power savings. And if you're going to say that in the overwhelming majority of the claims that you're going to say that you have remotes that must transmit each cycle, that means that even though they have nothing to convey, even though they have no substantive information to convey, they're going to have to turn on, use battery power, waste battery power in order to just send a control frame. And so I think, for the point that you made earlier, was that at most this language is ambiguous. It's certainly not clear when you read the language that everyone's pointing to, when the hubs and the remotes transmit and receive frames, that that is mandatory as opposed to being permissive. There's every reason to read it as being permissive when you look at the language of allowance further in the same claim and you look at the specification writ large. Would your point about defeating the battery saving, quite central purpose, how would that point apply to, I guess it's figure 19, not 18, the figure 19 embodiment in which in every cycle every remote sends something, whether it's a control frame or data? Well, I'm looking at... Wouldn't that defeat the battery saving purpose? Well, I think there's a difference between the remote selectively electing to transmit actual data, to transmit information, or selecting for whatever reason to transmit a control frame versus having a system in which the hub makes it mandatory, or the claims make it mandatory in order to be an infringing system, for every single one of the remotes to transmit every single time. And I don't read anything... I mean, it could still have its transmitter in sleep mode except for the tiny piece of time that is needed to send the control frame. Absolutely, Judge Francois. So I'm not here saying that it would totally defeat the battery saving purposes. I'm just saying that it's somewhat anomalous when you have what is at best ambiguous language to read it as being mandatory, not only in light of the fact that every single reference to this in the specification refers to opportunities, but also when you look at the purpose of the invention, which is battery savings, there's no question that that's going to be wasting battery power. Can I... On figure three, so we have this communication cycle. We've got the outbound portion, the inbound portion, the remote devices operate during the inbound portion. If all of the devices elect not to turn on, either because they have that type of independent, let's call it judgment, or they're not mandated to do it, then why is there a communication cycle to begin with? Why would there be a communication cycle if there's no communication or if it defeats figure three where there's no inbound information? So, Judge Reina, what figure three, and I think figure three sort of captures it well, what it identifies is that you have transmission opportunities, and it may be that in a particular cycle... So we have a situation where all of the remotes say elect opportunity not to transmit. Why is there a communication cycle to begin with? If there's a communication cycle, doesn't that imply that there's going to be an inbound information? Judge Reina, no, I think that what it implies is that there's going to be an opportunity for inbound information, that every single one of the remotes will have the opportunity to transmit. And just like you might imagine having a classroom where every student in the class is given five minutes to be able to ask a question, and that will be the cycle. And the students in their allotted opportunity don't have a question to ask, so they don't ask one. So their time passes, the next person's time passes, and maybe none of them have a question, and then you go around the cycle again. So I think it's the opportunities that make it a cycle. It's the intervals, whether or not the remotes... Suppose you and I are going to have a discussion, and we call that a communication cycle. I speak, you speak. I speak, you speak. You elect not to speak during a particular communication cycle. Why would I speak? If I'm not going to ask you a question to begin with that would require you to respond, then why would we call that a communication cycle? Well, Judge Arena, this may be where analogies start to break down. I mean, the purpose of this is to provide opportunities for devices in a Wi-Fi network to be able to talk to each other and not talk over each other, and that presupposes that they actually have data to transmit. And so the point of having this cycle is to have a predictable, anticipated opportunity for the device to be able to transmit. If it has no information, then it's not surprising that it wouldn't actually transmit anything, but that doesn't mean that you didn't have the cycle, even if it didn't have information that it didn't have to convey. So this language, I guess, would be something like a phrase that said, the trial has periods in which the prosecution and the defendants put on and cross-examine witnesses. That would perfectly well cover a situation in which no defendant chooses to put on witnesses. Absolutely, Judge Taranto. That's right. Or the classroom example. Every day has class periods in which the teacher and the students can ask and answer questions. That covers a situation in which no student speaks up in any given class. That's exactly right. Yes, Judge Taranto. Okay, Mr. O'Quinn, you're three minutes beyond your time. I'm going to give Mr. Summerfield, and he went over his time too, but not quite as much. Mr. Summerfield, I'll give you two minutes for rebuttal. Mr. Quinn, I'll give you two minutes left on your rebuttal limited to the rebuttal material for your cross-appeal. Thank you, Judge Moore. The patent very clearly has examples where mandatory frames are sent from the remote to the hub. If we look at Figure 3, page A104, there's Interval 86, which is TXOP request. If we go to Column 29, line 16, it says each remote in the group requests a TXOP allocation from the hub when that remote becomes active or enters the communication space of the hub. So if there is a remote to communicate with, and if, per Judge Rayna's question, there is a communication cycle, that TXOP request is going to be made. There's nothing permissive about it. The way you just described it, and I'm not remembering the details, but I was consistent with the way you just described it. This is the morning I'm checking in. You only have to do that once. I want an allocation. You're not asking for an allocation in every bloody cycle. I think that's actually what this is saying. What column? Column 29, line 16. And would the next sentence help? I'm sorry, when that remote becomes active. Or enters the communication space of the hub. Each remote must obtain a TXOP allocation prior to engaging in data communication over the RF network. There'd be no reason to have it just do that the first time, Your Honor. The point is, for each communication cycle, there has to be a TXOP allocation request. If it just happened the first time, it wouldn't work. Because how would the hub know to allocate time to that remote in subsequent communication cycles? Until it signs off. I'm sorry? Until it signs off. But there's no teaching of that in this particular passage, Your Honor. But besides that, that's not the only example. If we go to column 23, and we go to line 12, it says the ending frame number, field 180, is used in frames 152 sent from remote 66 to hub 64 to acknowledge the successful reception of a contiguous block of sequence frames from the hub 64. So when the information frame is sent out, this response is sent by the remotes. So that is mandatory. That is not permissive. Finally, as far as what the issues are in this appeal, the summary judgment motion below was ours. And we moved for summary judgment of no anticipation because of admissions we got from their expert that a limitation was missing. We thought that was the only one where there wasn't a question of fact, which is why we only moved on that issue. That has somehow now morphed into a concession that if we lose on this issue, anticipation is done. We don't agree. Can I be clear about one thing? Because I had to track this back through the record, and it wasn't easy to find, but it does appear that they also moved for summary judgment of anticipation, which was denied. It was actually dismissed because it was untimely. So the court dismissed the motion, didn't have a ruling on it. They filed the motion as a cross motion after the deadline for summary judgment. So the court didn't reach the question of their motion for anticipation. What about their cross motion? That was dismissed, Your Honor, as untimely. Are those two separate things that you were describing, a motion on their part and a cross motion? No, the motion was ours. We filed a motion of no anticipation. Just to clarify for me. Just them. I thought you said they made a motion for summary judgment of anticipation. The judge said, untimely, go away. That's correct. Then you moved for some, not then, but . . . We moved first. Okay. But then you referred to something called a cross motion. Their motion was actually a cross motion. Oh, it's the same thing. You're just using two different words for the same document. Yes, Your Honor. As opposed to simply filing an opposition, they cross moved and opposed. So let me be really clear. Your argument then, which Mr. McQuinn will address as soon as he stands up, just so that we're all clear on the procedure, is that it would be procedurally improper for us to ever enter judgment in their favor. The best they can get out of us is a vacate and remand because the lower court refused to entertain their summary judgment motion of anticipation on the grounds that it was untimely. I guess the way I would say . . . Right? The way I would say it, Judge Moore, is that I think what their position should be is that the court below improperly entered summary judgment of no anticipation. Yes, but that would only get them a vacate. That would get them a reversal of that summary judgment. What it can't ever get them is institution of a judgment of anticipation, which is what they've asked for in their brief. This is why I went back and researched it. I kept wondering why they asked for reversal and enter judgment of anticipation or at least give us a vacate when nobody was claiming there was a fact question here. So I kept not understanding why, and I kept going back and looking, and I did find a summary judgment motion. I guess I stopped too quick because I thought that summary judgment motion was then decided upon by the district court. No, Your Honor. It was a cross motion that was untimely and dismissed on procedural grounds. The judge never reached the merits of their cross motion, and we certainly didn't intend to imply that somehow this was the only issue on anticipation. It's the only one we thought there was no fact issue and therefore proper for summary judgment based on their expert's admissions, which is why we moved on that sole ground. So this is this motion at 2233. It's that same thing. They were opposing yours and cross moving for theirs in the same document. That's correct, Your Honor. And that's the thing where the district court said, your cross motion I'm not going to entertain because it's untimely. Where did the district court say that? Do we have that document? I don't know that that's actually in the record, Your Honor, because frankly You don't know if it's in the appendix, but it's got to be in the record below, right? It is, it's certainly, yes, it's certainly on the docket sheet as evidencing a dismissal for lack of timeliness. Yes. And that'll be clear if we pull the docket, and if not, if we ask the parties, you'll be able to provide it to us. Absolutely, Your Honor. Thank you. Any other questions? So Judge Moore, let me start with that issue. Candidly, I was not aware if the district court had separately procedurally dismissed it. My understanding was the district court reached the merits in deciding both issues, so let us look into that and confirm, and certainly if it's in fact the case that it was dismissed on timeliness grounds or procedural grounds, then that would mean that the proper result here would be a vacature as opposed to the entry of judgment. My understanding was that the only issue that was in dispute between either of the parties with respect to... I like the very candid way, with my colleagues' agreement, if they will agree, can the two of you send us, do your research and send us maybe by close of business tomorrow a letter limited to one page, single-faced, that will explain just these issues possibly collaboratively. If it can't be done collaboratively, you can each have a one-page letter and then the attached order that talks about the basis upon which the district court resolved each cross-motion. Of course, Judge Moore. Understand? And I understand the court's not looking for advocacy. I understand the court's not looking for advocacy. You just want to understand procedurally what happened, and that's exactly what we'll do. The reason that we had argued... But you can feel free to say, and therefore we revise our request to the extent that we had asked for reversal, we now understand it to be procedurally improper and we ask for vacancy. And if that's the case... You can make that clarification in your letter if that would set the record straight. We will make that clarification. Judge Moore, the reason, though, that we were arguing that we should be entitled in the alternative to a remand on the issue of anticipation or at least the issue of obviousness is because if you turn to our alternative argument, not the claim construction argument, but the Upshur-Smith argument, we think that that would entitle us to judgment as a matter of law, but at a minimum there would be fact issues as to what the prior art, in fact, disclosed, and that's the reason that we were arguing that in the alternative we at least ought to be entitled to a remand. If the court has further questions about the claim construction issue that we've been talking about, I'm happy to take those. Otherwise, I'll yield back the balance. Thank you, Mr. Rockland. Thank you very much. I thank both counsel. Thank you, Judge Moore. This case is taken under submission.